# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| STETSON PETROLEUM CORP., | § | |
| EXCELSIOR RESOURCES, LTD., R&R | § | |
| ROYALTY, LTD. | § | |
| | § | |
| v. | § | CASE NO. 4:14-CV-43 |
| | § | Judge Mazzant |
| TRIDENT STEEL CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Third-Party Defendants AJU Besteel Co. Ltd's and CMC Cometals Steel, A Division of CMC's Motion to Exclude the Expert Supplemental Opinion of Thomas M. Wadsworth, P.E. (Dkt. #111), Plaintiffs' Stetson Petroleum Corp., Excelsior Resources, Ltd., and R&R Royalty, Ltd. Objections and Motion to Exclude Certain Opinions and Testimony of Designated Defense Experts (Dkt. #112), and Plaintiffs' Stetson Petroleum Corp., Excelsior Resources, Ltd., and R&R Royalty, Ltd. Opposed Motion to Exclude the Supplemental Expert Report of Exponent Failure Analysis Associates (Dkt. #120). After reviewing the relevant pleadings, the Court finds that the motions should be denied.

## BACKGROUND

The present case concerns a casing pipe failure. Stetson Petroleum Corp. ("Stetson") bought a string of new 5.5", 17# (.304 wall) and 20# (.361 wall), L-80, LT & C, API 5CT AJU BESTEEL casing from Trident Steel Corporation ("Trident") (Dkt. #112 at p. 1). Trident delivered the casing to the Coley 35-6 #1 ST well in Conecuh County, Alabama (the "Well"), in which Stetson was the operator (Dkt. #112 at pp. 1-2). However, during the final positioning of the casing to set it in the slips of the wellbore, the casing jumped out as a result of a connection failure (Dkt. #112 at p. 2; Dkt. #121 at p. 3).

1

On January 21, 2014, Plaintiffs Stetson Petroleum Corp., Excelsior Resources, Ltd., and R&R Royalty, Ltd. (collectively, "Plaintiffs") filed their complaint in the Eastern District of Texas (Dkt. #1). On March 28, 2014, Stetson filed its amended complaint against Trident, alleging claims under breach of contract, misrepresentation, breach of warranty, the Deceptive Trade Practices Act (the "DTPA"), and negligence in selling the casing (*See* Dkt. #4). On May 22, 2014, Trident filed its Third-Party Complaint, in which it impleaded AJU Besteel Co., Ltd. ("AJB"), CMC Cometals Steel, A Division of CMC ("CMC," collectively with AJB "AJB/CMC"), and AJU Besteel, USA, Inc. (Dkt. #10). The Third-Party Complaint alleged causes of action for contribution and indemnity, declaratory judgment, breach of contract, and breach of warranty (Dkt. #10). On August 28, 2014, Plaintiffs filed cross-claims against CMC and AJB, alleging causes of action for breach of warranty, negligence, and deceptive trade practices (Dkt. #30).

On January 5, 2015, Plaintiffs served their Designation of Experts, and designated Thomas Wadsworth, P.E. ("Wadsworth"), as Plaintiffs' expert witness (Dkt. #111 at p. 3). Wadsworth's report concludes that the casing failed in part because of pin jumpout (Dkt. #111 at p. 3).

On February 18, 2015, AJB served their Designation of Experts, where it designated Dr. L. Brun Hilbert ("Hilbert"), a mechanical and petroleum engineer, and Dr. Lawrence E. Eiselstein ("Eiselstein"), a metallurgist, as testifying experts (Dkt. #111 at p. 3). Their report concluded that the casing failure likely occurred because either Energy Drilling exerted too much force in pulling the casing into place, and/or Tubular defectively threaded the casing (Dkt. #111 at p. 3).

On March 13, 2015, AJB filed its Third-Party Complaint against Energy Drilling Corp. ("Energy Drilling") and Tubular Services, LLC ("Tubular") alleging, in part, that "[Tubular] improperly performed threading work on the casing." (Dkt. #115 at p. 4; *see* Dkt. #75 at ¶ 23). The complaint also alleged that "Energy Drilling pulled the casing with too much force that the casing separated at the threaded connection." (Dkt. #75 at ¶ 26). On April 24, 2015, CMC filed its Third-Party Complaint against Energy Drilling and Tubular, alleging similar contentions as AJB's Third-Party Complaint (Dkt. #86).[1]

On April 1, 2015, Wadsworth supplemented his previous report in order to set forth four different conclusions (Dkt. #111 at p. 3). On July 15, 2015, AJB/CMC supplemented the report of their experts, Drs. Hilbert and Eiselstein (the "Exponent Supplemental Report"), in order to include the new conclusions of Wadsworth (Dkt. #121 at p. 6).

On July 20, 2015, AJB/CMC filed their Motion to Strike the Expert Supplemental Opinion of Thomas M. Wadsworth, P.E. (Dkt. #111). On August 6, 2015, Plaintiffs filed their response (Dkt. #118). On August 17, 2015, AJB/CMC filed their reply (Dkt. 127).

Also on July 20, 2015, Plaintiffs filed their Motion to Strike Certain Opinions and Testimony of Certain Defense Experts (Dkt. #112). On August 6, 2015, Trident filed its response (Dkt. #117), and AJB/CMC filed their response (Dkt. #121). On August 17, 2015, Plaintiffs filed their reply (Dkt. #125; Dkt. #126). On August 26, 2015, Trident filed its sur-reply (Dkt. #130).

On August 6, 2015, Plaintiffs filed their Motion to Exclude the Supplement Expert Report of Exponent Failure Analysis Associates (Dkt. #120). On September 28, 2015, AJB/CMC filed their response.

---

[1] On October 30, 2015, Energy Drilling was dismissed with prejudice by AJB/CMC (Dkt. #156).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590-93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the court should consider numerous factors. *See Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or

technique is generally accepted in the relevant scientific community.  *Id.* at 593-94; *Pipitone*, 288 F.3d at 244.  When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate."  *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test."  *Daubert*, 509 U.S. at 593.  As the Court has emphasized, the *Daubert* framework is "a flexible one."  *Id.* at 594.  The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue.  *See Kuhmo*, 526 U.S. at 152.  Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court.  *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

*Motion to Exclude Supplemental Opinion of Thomas M. Wadsworth, P.E.*

AJB/CMC move to strike the supplemental opinion of Plaintiffs' expert Wadsworth, as untimely and unreliable under Rule 702.  AJB/CMC argues that Wadsworth's supplemental opinion is unreliable because (1) his opinions are based on an unsupported assumption that the casing, which allegedly failed, had a hooked end, and (2) his opinions are not the product of the proper application of reliable principles and methods (Dkt. #111 at p. 6).  AJB/CMC also contend that Wadsworth's supplemental opinion is untimely, as Plaintiffs supplemented their expert opinion to include new information that was not previously disclosed by the Court's January 5, 2015 deadline to designate an expert (Dkt. #111 at p. 4).  Plaintiffs allege that their supplemental expert opinion is timely as Plaintiffs had a duty to supplement Wadsworth's expert report if new information was received in the case (Dkt. #118 at pp. 5-6).  Additionally, Plaintiffs allege that the supplemental opinion is reliable, and therefore, is admissible (Dkt. #118 at p. 8).

First AJB/CMC objects to the Wadsworth Supplemental Report as being untimely filed (Dkt. #111 at p. 4). Federal Rule of Civil Procedure 26(e) states:

> (1) A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> (B) as ordered by the court.

FED. R. CIV. P. 26(e)(1); *see Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 570, n. 42 (5th Cir. 1996). Additionally, for an expert witness, this duty to disclose extends to both the information included in the report and the information included during the deposition. FED. R. CIV. P. 26(e)(2).

At the time of Wadsworth's initial report, Plaintiffs did not have possession of documents from AJB, CMC, or Trident (Dkt. #118 at p. 4). In October 2014, Plaintiffs received documents pursuant to a written questions deposition by Plaintiffs regarding Tubular (Dkt. #118 at p. 4). Plaintiffs assert that "once additional records were received from other parties and analyzed, Plaintiffs found records from Tubular Services that indicated that 710 out of 713 joints of casing, including the casing at issue in this case, had to be shimmed in order to be threaded due to a condition known as 'hooked ends.'" (Dkt. #118 at p. 4).

Additionally, in January 2015, Plaintiffs served requests for production to Trident regarding quality control issues at AJB mills (Dkt. #118 at p. 5). Trident responded with documents that reflected quality control issues with CMC and AJB pipe (Dkt. #118 at p. 5). In March and April 2015, CMC supplemented its document disclosures, and Plaintiffs "learned that the overwhelming likelihood that casing that failed in its well bore was in the production run where Tubular Services reported 98.6% of the casing had to be shimmed because hooked ends

prevented cutting a proper API thread unless the pipe was shimmed" (Dkt. #118 at p. 5). On March 11, 2015, AJB completed its document production (Dkt. #118 at p. 5).

The Court finds that given the dates of discovery, the Wadsworth Supplemental Report was timely filed on April 1, 2015. Therefore, the Court overrules AJB/CMC's objections to the Wadsworth Supplemental Report.

Rule 702 requires that an expert witness be qualified. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *see Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, Rule 702 does not demand that an expert be highly qualified in order to testify, and "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact[.]" *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Rule 702 also requires that expert testimony be relevant. "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593). The Fifth Circuit has stated that testimony is relevant when it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591).

Finally, Rule 702 requires that expert testimony be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93). When determining reliability, "[t]he court focuses on the expert's methodology, not the conclusions generated by it." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013) (citing *Nunn*

7

*v. State Farm Mut. Auto Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *4 (N.D. Tex. June 22, 2010)). "If, however, 'there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered,' the court may exclude the testimony as unreliable." *Orthoflex*, 986 F. Supp. 2d at 783 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998).

AJB/CMC alleges that Wadsworth's supplemental opinion is unreliable because his opinion is "not the product of proper application of reliable principles methods." (Dkt. #111 at p. 7). Specifically, AJB/CMC argues that Wadsworth utilized a linear beam theory to support his opinions; however, Wadsworth should have used a nonlinear beam theory, as an "application of a linear beam theory results in a significant overestimation of the bending movement of the casing." (Dkt. #111 at p. 7). AJB/CMC also contend that the equation used by Wadsworth is no longer applicable, and that Wadsworth indicates in his supplemental report that "the 'effective' tensile load was larger than was recorded by the Pason EDR data at the rig." (Dkt. #111 at p. 7).

AJB/CMC do not contend that Wadsworth is not qualified to render an opinion; therefore, the Court will only address their relevancy and reliability contentions. The Court finds that Wadsworth's supplemental opinion is reliable; and therefore, is admissible at trial. In his supplemental opinion, Wadsworth does list the documents that he reviewed in reaching his conclusion (Dkt. #118, Exhibit 2, Exhibit 3). AJB/CMC do not present the Court with any evidence that Wadsworth's analysis of the hooked ends and his opinion is not based on "the proper application of reliable principles and methods." (Dkt. #118 at p. 11). However, Plaintiffs state that Wadsworth relied on recognized publications and texts when creating his opinion (Dkt. #118 at p. 11). Additionally, the Court finds that the methodology used to estimate the increased

8

fiber stress due to the hooked ends is valid, and is supported by mechanical engineering textbooks and taught in accredited engineering schools (*See* Dkt. #118 at pp. 11-12).

The Court's gate-keeping function under *Daubert* is not intended to replace the adversarial system and the jury's responsibility to evaluate and weigh the evidence presented by each party's experts. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evience, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (The trial court must act "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). The Court finds that Wadsworth's supplemental opinion is relevant and reliable. Therefore, the Court finds that Third-Party Defendants' motion to exclude Wadsworth's supplemental report should be denied.

*Plaintiffs' Objections and Motion to Exclude Testimony of Defense Experts (Dkt. #112)[2]*
*Expert Report of John E. Slater, Ph.D., P.E.*

Plaintiffs move to strike the testimony of John E. Slater ("Slater"), Trident's expert witness. Although Plaintiffs do not challenge Slater's qualifications as engineer, they maintain that his opinion is based on speculation and is not reliable (Dkt. #112 at p. 5). Trident alleges that Slater's opinions are relevant, reliable, and based upon a well-founded methodology (Dkt. #117 at p. 7).

---

[2] Although the Court will address Plaintiffs' motion to strike, Plaintiffs should note that the motion does not comply with the Local Rule CV-7. Local Rule CV-7(h) states that "[t]he 'meet and confer' motions practice requirement imposed by this rule has two components, a substantive and a procedural component. For opposed motions, the substantive component requires, at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant." L.R. CV-7(h). On August 14, 2015, Plaintiffs submitted a notice stating that they completed their meet and confer requirement (Dkt. #124). However, the Parties should note that they must comply with the Local Rules in the future.

The Fifth Circuit has noted that a court "must bear in mind the purpose of [the expert's] testimony when addressing its reliability." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). The purpose of Slater's testimony is to "offer testimony regarding metallurgical testing and evaluation conducted in this matter…[and] the cause(s) of the casing failure." (Dkt. #117, Exhibit E at p. 3; Exhibit D at ¶ 3).

Plaintiffs also allege that "Slater has not stated any objective, scientific basis to conclude that the tensile load must have increased in the 10 second interval between data gathering[;]" and therefore, his opinion should be excluded as improper *ipse dixit* opinions (Dkt. #112 at p. 7). Reliability and validity do not require certainty, but there must be evidence that the knowledge is more than the mere speculation of the expert witness. *Daubert*, 509 U.S. at 590. The Supreme Court noted that "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Id.*

In the present case, the exact hook load weight at the time of the failure is unknown; therefore, Slater, as well as the other experts, must infer what the tensile load was based on the known facts and accepted truths in their fields. Slater's opinion is based upon his physical observations of the failed casing, as noted in the Element and T.H. Hill reports, the pullout and fracture strengths for the connection, and his general knowledge of metallurgy and the properties at issue (*See* Dkt. #117 at p. 10). The Court finds that Slater's testimony is reliable because it is supported by the appropriate validation. Therefore, the Court will overrule Plaintiffs objections and deny their motion to strike the testimony of Slater.

*Expert Report of Kenneth P. Malloy, P.E.*

Plaintiffs object to and move to strike the testimony of Kenneth P. Malloy, P.E. ("Malloy") on the basis that his opinions are unsupported by objective data, which renders them

unreliable (Dkt. #112 at p. 7). Trident asserts that Malloy's opinions are admissible because they "are relevant, reliable, and based upon a well-founded methodology." (Dkt. #117 at p. 10). Rule 703 allows the admissibility of an expert witness' opinion if the sources underlying the opinion are of a type reasonably relied on by experts in the particular field when forming opinions or inferences on the subject. *See* FED. R. EVID. 703.

Malloy based his opinions on the information that was made available to him, his years of training, practical field experience, a review of current recommended practices, and associated records (*See* Dkt. #117, Exhibit F). Additionally, Malloy's report lists the publications that he reviewed in reaching his opinions (Dkt. #117, Exhibit F). Plaintiffs claim that Malloy's testimony is not admissible because "he [] offers no analysis to support his conclusion that the hold was tortuous or corkscrewed." (Dkt. #117 at p. 11; *See* Dkt. #112 at pp. 8-9). Because Malloy includes in his report the publications and materials that he relied upon in making his decision, the Court finds that his opinion is reliable and his opinion is admissible at trial. It is the province of the trier of fact to make determinations of witness credibility. *See Daubert*, 509 U.S. at 596. Therefore, the Court overrules Plaintiffs objections and denies their motion to strike the testimony of Malloy.

*Supplemental Report of Exponent Failure Analysis Associates (Dkt. #112/Dkt. #120)*

Plaintiffs object to and move to strike Exponent Failure Analysis Associates' ("Exponent") Supplemental Report (the "Exponent Supplemental Report") in its entirety as untimely and prejudicial (Dkt. #112 at p. 10). Additionally, Plaintiffs argue that the Exponent Supplemental Report should be stricken because it is unreliable as "the opinions are not the product of 'reliable principles and methods' and implements the use of 'flawed' methodology[.]" (Dkt. #120 at p. 3). AJB/CMC asserts that the Exponent Supplemental Report is not untimely as

"it was served within a reasonable time after receipt of (1) the untimely supplemental expert report by [Plaintiffs] and (2) necessary discovery needed to rebut Mr. Wadsworth's conclusions." (Dkt. #121 at p. 10).

In his Supplemental Opinion, Wadsworth opined, in part, that the casing that allegedly failed had a hooked end. AJB/CMC contends that this was "espoused for the first time in Plaintiffs' Supplemental Report" and that "it was necessary for AJB/CMC to obtain additional discovery regarding the casing delivered to Stetson." (Dkt. #121 at p. 11). In order to obtain information regarding Wadsworth's Supplemental Report, ABJ/CMC took the deposition of Matthew Beckmann ("Beckmann") on June 9, 2015 (Dkt. #121 at p. 11). ABJ/CMC received the deposition transcript on June 29, 2015, and served their supplemental report approximately seventeen days later (Dkt. #121 at p. 11).

The Court finds that the Exponent Supplemental Report is timely, however, even if it were untimely, the potential prejudice to Plaintiffs would be harmless. When determining if prejudice exists, the Court looks to the following four factors: (1) the explanation for the timing of the disclosure, (2) the potential prejudice to the opposing party if the evidence is allowed, (3) the availability of a continuance to cure such prejudice, and (4) the importance of the evidence. *CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

AJB/CMC states that the Exponent Supplemental Report was not served until July 15, 2015, because it needed to investigate and obtain additional discovery after receiving Wadsworth's Supplement Report (Dkt. #121 at p. 11). The Court finds that the evidence is necessary to AJB/CMC's cross-examination of Wadsworth, as Wadsworth expressed new opinions regarding hooked ends in his supplemental report. Additionally, the Court finds that the

prejudice to Plaintiffs is minimal, and could be easily cured by a continuance of the Court's July 17, 2015 deadline to object to the supplemental expert report.

Plaintiffs also contend that the Exponent Supplemental Report should be stricken as unreliable (*See* Dkt. #120 at p. 7). Specifically, Plaintiffs allege that the Exponent Supplement Report "makes no reference to any authoritative text or theory upon which it relies and upon which practitioners in the field rely to support its assertions (Dkt. #120 at p. 7). AJB/CMC assert that "the opinions of Exponent are based on [Hilbert and Eiselstein's] respective knowledge, training, and experience, as well as their utilization of well-accepted methodologies within the scientific community." (Dkt. #140 at p. 7).

The Court finds that the Exponent Supplemental Report is reliable, and thus, admissible. In the Exponent Supplemental Report, Hilbert and Eiselstein cite the documents that they relied upon when reaching their conclusion (Dkt. #120, Exhibit 4). Additionally, they reached their opinions based upon their knowledge, training, and experience. As previously stated, the Court's role as a gate-keeper should not invade upon the trier of fact's role in making credibility determinations at trial. *See Daubert*, 509 U.S. at 596. Because Hilbert and Eiselstein used accepted methodologies and stated the materials that they relied upon to make their decisions, the Court finds that the Exponent Supplemental Report is reliable. Therefore, the Court finds that Plaintiffs' objections to and motion to strike the Exponent Supplemental Report is denied.

## CONCLUSION

It is therefore **ORDERED** that Third-Party Defendants AJU Besteel Co. Ltd's and CMC Cometals Steel, A Division of CMC's Motion to Exclude the Expert Supplemental Opinion of Thomas M. Wadsworth, P.E. (Dkt. #111) is hereby **DENIED**.

It is further **ORDERED** that Plaintiffs' Stetson Petroleum Corp., Excelsior Resources, Ltd., and R&R Royalty, Ltd. Objection and Motion to Exclude Certain Opinions and Testimony of Designated Defense Experts (Dkt. #112) is hereby **DENIED**.

It is further **ORDERED** that Plaintiffs' Stetson Petroleum Corp., Excelsior Resources, Ltd., and R&R Royalty, Ltd. Opposed Motion to Exclude the Supplemental Expert Report of Exponent Failure Analysis Associates (Dkt. #120) is hereby **DENIED**.

**SIGNED this 4th day of November, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE